UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

------------------------------------------------------ x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE
CONFLICT ID NUMBER 183000 (ALEY RESTAURANT MANAGEMENT, LLC)

1:26-MC-02492-BMC-JAM

------------------------------------------------------ x

**Parties**:

Registrant Aley Restaurant Management, LLC ("ARM")
Registrant Class Action Refund LLC ("CAR")

**Representatives**:

Ray Aley
3554 Backbone Dr.
Loveland, CO 80538-9287
802-318-4705
ray@aley.org
Representative of Registrant Aley Restaurant Management, LLC

Melissa Boos, Client Services, Class Action Refund LLC
3291 Estancia Ln.
Ocean Ridge, FL 33435
443-827-8777
mboos@carefundcenter.com
Representative of Registrant Class Action Refund LLC

I. Background

The parties to this conflict have both registered a Taxpayer Identification Number ("TIN") ending in 8194 and seek to recover a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions during the class period

associated with that TIN (the "Claim"). CAR registered the TIN under the name of M&W 2 LLC ("M&W 2"), which is owned by CAR's client White Management Corporation ("WMC"). CAR contends that WMC owns the Claim as the result of an agreement under which ARM sold M&W 2 to WMC. *See* Email from Melissa Boos of CAR ("Boos") to Ray Aley ("Aley") dated July 10, 2024 (submitted to Class Administrator on Dec. 24, 2024). Aley, who registered the same TIN in ARM's name, contested CAR's registration on the ground that ARM "was owned by me during the claim period. The units of [ARM] weren't conveyed until September 20, 2019." Email from Aley to Boos dated June 28, 2024 (forwarded to the Class Administrator on Dec. 24, 2024).[1]

In response to an inquiry from CAR, the Class Administrator advised that: "[t]he only way to resolve a conflict is for the parties to reach a resolution or for the Special Master to determine who is the proper claimant. If the parties in conflict are not able to reach a resolution, the Class Administrator will escalate it to the Special Master to determine for resolution." Email from Class Administrator to CAR dated Dec. 24, 2024. In the absence of a consensual resolution, the Class Administrator referred the matter to me. After reviewing the sparse record before the Class Administrator and noting it did not include the 2019 agreement at issue, I directed the parties "to submit, **no later than June 26, 2026**, a copy of the 2019 agreement between them and any additional relevant documents." Order dated June 12, 2026 (emphasis in original). That same day, Aley submitted a copy of a Stock Purchase Agreement dated September 19, 2026 ("Agreement") as an attachment to an email setting forth his position. Email from Aley to Special Master dated June 12, 2026 ("Aley Email"). As of this writing, CAR has not submitted anything to me.

[1] Although not dispositive, the Class Administrator informs me that the Visa and MasterCard transaction data for the TIN at issue here was associated primarily with ARM as well as, in some instances, with individual restaurants.

The parties to the Agreement are Ray E. Aley, III and Cheryl Aley, collectively designated as the "Seller," and David R. White and Mary Carol White, collectively designated as the "Buyer." Agreement at 1. Neither ARM nor CAR's client WMC is a party to that Agreement.

The Agreement's preamble recites that "the parties have reached an understanding with respect to the sale and purchase of some of the outstanding corporate shares of M & W Foods, Inc." Consequently, most of the Agreement's provisions relate to the sale and purchase of M & W Foods, Inc. ("M&W") – not of ARM or its assets. The few provisions that do mention or refer to ARM are set out in full below:

> 1. SALE OF CORPORATE SHARES.
>
> …
>
> The parties agree to and [sic] adjustment at closing for Cash on Hand plus Inventory less associated Accounts Payable for the seven (7) Dunkin Donuts transferred by Aley Restaurant Management, as of an agreed date of September 20, 2019. The parties agree such amount shall be $7,549.90 credited to the Buyer.
>
> In addition, upon further advice and counsel from the parties professionals, the parties jointly agree to "Spin-Off" the four (4) Kentucky Fried Chicken ("KFC") stores in M&W to a new corporation, Adirondack Chicken Corp. to be owned by the parties in the same percentages as was in M&W. Immediately thereafter and simultaneously thereto, Buyer shall purchase such shares from Seller in the newly formed entity such that Cheryl Aley will own 20% of the new entity and Buyer shall own the remaining 80% thereto. The consideration for the 31.50% interest acquired by Buyer (51.50% - 20% = 31.50%) shall be $1,000,000.00 effectuated by a full and complete discharge of the following indebtedness:

| | |
|---|---|
| a. Aley Restaurant Management to M&W | $740,703.10 |
| b. Cheryl & Ray Aley to Aley Restaurant Management | $ 85,213.03 |
| c. LESS White Management, Inc. to Aley Restaurant Management | $462,783.92 |
| | $363,132.18 |

> and a check at closing for $636,867.79.
>
> …

> Finally, all parties shall fully cooperate in executing any and all documents necessary to transfer interests in the affected Kentucky Fried Chicken, Taco Bell and/or Dunkin Donuts stores expressly referenced herein.
>
> …
>
> 2. CLOSING. … At closing the Seller shall deliver to the Buyer the following:
>
> …
>
> e. Unit Transfer Powers conveying the units of Aley Restaurant Management, LLC to M&W.
>
> …
>
> At the closing the Buyer and M&W (as applicable) shall execute (or cause to be executed) and deliver to the Seller the following:
>
> …
>
> d. The Guaranty made by the Company, Adirondack Chicken Corp. and Aley Restaurant Management, LLC in favor of Ray E. Aley, III and Cheryl Aley, in the form attached hereto as Exhibit G.
>
> …
>
> 3. POST-CLOSING COVENANTS. After the closing, the parties agree to work together in good faith to obtain the following:
>
> …
>
> (b) Not later than January 1, 2020, the Release of Ray E. Aley III and Cheryl Aley from any and all personal guarantees related to the indebtedness of the Company, Adirondack Chiken [sic] Corp. and Aley Restaurant Management, LLC and execution of any and all related documents.

Agreement §§ 1-3.

The Agreement thus contemplates (1) that the Aleys and the Whites will take the steps necessary for ARM to transfer seven Dunkin Donut restaurants to the Whites (not WMC); (2)

that the Aleys will deliver "Unit Transfer Powers conveying the units of [ARM] to M&W" and (3) that the parties will work together to release the Aleys from any debt to ARM.[2]

II. Analysis

The conflict here is about who has authority to register the TIN ending in 8194 and seek recovery based on ARM's payment card transactions during the class period. In his email to CAR dated June 28, 2024, Aley did not assert that he currently owns ARM. He says only that ARM "was owned by [him] during the claim period" and that "[t]he units of [ARM] weren't conveyed until September 20, 2019." Similarly, in his email to me, Aley doesn't explicitly address the question of who now owns ARM. Instead, after summarizing the Agreement's relevant provisions he writes the following:

> Because the transaction explicitly carved out ARM's operations as an asset and unit transfer into M&W rather than a standard corporate stock sale, I maintain that the rights to the MDL 1720 damages claim arising from ARM's historical payment card transactions during the class period remained with the original ownership.

Email dated June 12, 2026, at 1.

I respectfully disagree. While ownership of a corporation is divided among shares, ownership of a limited liability company like ARM is divided among membership units. Thus, the fact that the Agreement's provisions concerning ARM described a unit transfer rather than "a standard corporate stock sale" reflects only ARM's organization as a limited liability company. It does not mean that after the Aleys conveyed the units of ARM to M&W they continued to own ARM or its assets. Absent an agreement to the contrary (which does not appear in the record before me), once M&W came into possession of the units of ARM, it necessarily owned the

[2] The record before me does not explain the difference between M&W (the entity named in the Agreement) and M&W 2 (the entity that CAR associated with the TIN ending in 8194 in its registration). Neither CAR nor Aley has suggested that any distinction between them is material.

claims ARM owned at the time of the Agreement. That includes ARM's share of the settlement proceeds in *MDL 1720* to the extent ARM had not previously disposed of them.

The Agreement on which Aley relies does not support the proposition that Aley currently has any ownership or membership interest in ARM or any authority to file a registration in its name or speak for it. I therefore conclude that CAR has authority to register the TIN ending in 8194 and that Aley, as the purported representative of ARM, does not.

III. <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to withdraw the registration Aley has filed in ARM's name and process CAR's registration of the corresponding TIN.

IV. <u>Objections</u>

This Report and Recommendation will be served on all registrants who are parties to the instant conflict via the Court's ECF system, and the Class Administrator will also promptly provide a copy to all such registrants. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-02492-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants,

as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMA-JAM, Doc. 3, ¶ 4.

Dated: July 28, 2026

/s/ James Orenstein
Special Master